Ted D. Ayres, General Counsel Kansas Board of Regents 700 S.W. Harrison, Suite 1410 Topeka, Kansas 66603-3760
Dear Mr. Ayres:
On behalf of the Kansas board of regents you request our opinion concerning whether the Kansas state university research foundation (KSURF) is covered by the provisions of the Kansas tort claims act, K.S.A. 75-6101 et seq.
K.S.A. 1994 Supp. 75-6104, as amended by L. 1995, ch. 260, sec. 10, establishes that a "governmental entity" and any "employee acting within the scope of the employee's employment" without malice shall be afforded the protections of the Kansas tort claims act.
 "`Governmental entity' means state or municipality." K.S.A. 1994 Supp. 75-6102(c), as amended by L. 1995, ch. 82, sec. 7.
 "`State' means the state of Kansas and any department or branch of state government, or any agency, authority, institution or other instrumentality thereof." K.S.A. 1994 Supp. 75-6102(a); as amended.
There is no question that Kansas state university, under the control of the Kansas board of regents, is a state institution and thereby qualifies as a governmental entity. K.S.A. 1994 Supp. 76-711(a); Brown v. Wichita State University, 217 Kan. 279,283 (1975). The university is therefore covered by the tort claims act. The question is whether KSURF is also a governmental entity covered by the act.
Clearly, an entity that has sovereign powers or is legislatively granted governmental status for purposes of the act is covered by the act. See Dougan v. Rossville Drainage District, 24 Kan. 315,318 (1988). A more difficult question arises with respect to specific subdivisions or agencies created by governmental entities. This issue has been addressed by a variety of Attorney General opinions and cases. From these authorities, a three-part test to determine whether a particular entity is within the scope of the tort claims act has emerged.
First, the entity in question must be created by legislation or other governmental act. In Attorney General Opinion No. 89-81, this office opined that the Kansas college of technology was a governmental entity for purposes of the act in part because the college was created and declared to be a state agency by legislative act. Further, entities created by other governmental entities have been deemed within the scope of the tort claims act. In Attorney General Opinion No. 86-109, we opined that the continuing legal education commission was covered by the act in part because it was created by and on behalf of the state judicial branch.
Second, the entity in question must perform governmental functions or be created for a governmental purpose. This analysis was the focus of opinions concluding that the Kansas technology enterprise corporation, the Kansas healthy kids corporation and the corporation for change were covered by the act. Attorney General Opinions No. 86-155, 93-62. See also Woods v. Kansas TurnpikeAuthority, 205 Kan. 770 (1970).
Third, in order to be covered by the tort claims act, the state or municipality involved must maintain significant control over the entity. This requirement is consistent with the reasoning inBrown v. Wichita State University (decided before enactment of the tort claims act) which found Wichita state university responsible for acts of the athletic director of the physical education corporation because of the agency relationship that existed between the university and the physical education corporation. 217 Kan. 279 (1975) and 219 Kan. 2 (1976). Similarly, with respect to an interlocal agreement between a municipality and the Kansas municipal gas agency we opined that a "continuing interrelation" and a "degree of control" between an agency and the governmental entity created an agency relationship sufficient to implicate the provisions of the tort claims act. Attorney General Opinion No. 90-124.
Applying this three-part test to the current question, we conclude that KSURF falls within the scope of the tort claims act. First, KSURF was created by a governmental entity, Kansas state university. Second, the agreement between KSURF and Kansas state university indicates that KSURF was established to "promote, encourage and aid research at the University and to provide the means, methods, and agencies by which inventions and discoveries at the University may be patented, commercialized, or otherwise disposed of for the benefits of the University and its faculty, staff, alumni and students. . . ." Thus, the sole purpose of KSURF is to promote and work on behalf of a governmental entity. Finally, the following factors demonstrate that Kansas state university and the state of Kansas maintain a significant degree of control over KSURF:
1) The agreement between the university and KSURF defines KSURF as the "exclusive agent" of the university.
2) Management of KSURF is by its board of directors which includes, among others, a member of the state board of regents, an alumnus appointed by the board of directors of the alumni association of Kansas state university, the president of the university, the vice provost for research, and the university attorney.
3) All revenues generated by KSURF (other than the 15% that goes to inventors or creators) is paid to, and thereby controlled by, the university.
4) In order for KSURF to enter into contracts with third parties, the agreement must be approved by the department head, dean of the college, and the vice provost for research.
5) KSURF must provide financial reports to the Kansas board of regents.
6) The "Agreement" itself states the intention of the parties that KSURF is an instrumentality of the university and subject to the provisions of the Kansas tort claims act.
These factors, together with the fact that it was created by the university to serve university purposes, make KSURF a govermental entity for purposes of the tort claims act. See Attorney General Opinion No. 86-45 (board of trustees of Wichita state university, created by statute, controlled in part by board of regents and performing governmental functions is covered by act).
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm